EFA requires, at the very least, conduct that is alleged to constitute sexual harassment under applicable law. That is the cornerstone of EFA's definition of a sexual harassment dispute that constitutes sexual harassment and then elipsed under applicable law. Mr. Lee was not a TikTok employee. He's a third party over whom it's undisputed. There's no allegation in the complaint. He's not a TikTok employee. The defendant's exercise no control over him. Defendants had no reason to believe that he would engage in this conduct. His conduct cannot be imputed to the defendants, which means under any law that's been asserted here, there hasn't been workplace sexual harassment. It would be no different than if I'm walking out of this courtroom and opposing counsel says something to me that's offensive. I can't sue Jones Day for sexual harassment because it doesn't have any control over opposing counsel or this courtroom and would have no reason to know that that happened. But just looking at the language of the statute, and I've got to admit this is a pretty circular provision, but there needs to be a dispute related to conduct that is alleged to constitute sexual harassment under applicable law. Why can't we read just the conduct? Why can't we read the conduct in France by a third party? And I understand your equitable arguments, but it fits within the language of that provision. Why doesn't it? Because it is not. It does not constitute sexual harassment under applicable law. And I think if you held it, if it did, because it took place in France, because we the defendants had no control over this person. He's not an employee. He's not a coworker. He's a third party. And in third party situations, you impute to the employer only when the employer has reason to know or can control the person. There's no such allegations here because there cannot be those allegations here. Why would we not construe sexual harassment to mean harassment on account of sex? Well, you have to look to the law here and sexual harassment because Federal law, New York State law and New York City law are all uniform that sexual harassment is a subset of gender discrimination. And I think it's important. Congress didn't use the term sexual discrimination in the statute. It had identified two very specific forms of conduct, sexual assault and sexual harassment. In using that term, sexual harassment, even though it's not defined in Title VII, conduct was – Congress was clearly indicating that it was interested in a very specific species of sexual discrimination. But reading the language of the statute, sexual harassment, seems to me to mean harassment on account of sex. But it doesn't stop at sexual harassment. Sexual harassment under applicable law. And under applicable law, you have to have a sexualized component to it. And any other reading would completely collapse the notion of sexual harassment into sex discrimination. We have Federal gender discrimination law. Correct. But you are – That's actionable. The Supreme Court has held in meritor that sexual harassment is a specific subset of sex discrimination. It's a subset that involves sexual misconduct. And going back in time, this was passed as a result of the MeToo movement. Congress was addressing a very specific problem that was uncovered by the MeToo movement, which was the abuse of the confidentiality of arbitration agreements to keep from the public eye the most egregious forms of sex discrimination. I mean, rape, sexual assault, terrible quid pro quos, and egregious sexual harassment. And it purposefully used the term sexual harassment, not sexual discrimination, knowing full well that that term doesn't appear anywhere in Title VII. So it either adopted its common meaning – and, you know, I would commend to you the decisions in Singh by Judge Etkin and the MeToo decision by Judge Cronin. Judge Cronin goes through very carefully and says, look, the commonly understood meaning of sexual harassment is sexualized misconduct, and then goes through New York City law, and it's the same there, too. I mean, in both Singh and MeToo, the Court is citing the New York City Commission on Human Rights' website on the Stop Sexual Harassment Act. New York City says sexual harassment – so, A, it's recognizing sexual harassment as something different from sexual discrimination, and says sexual harassment is unwelcome verbal or physical behavior based on a person's gender and can include unwanted touching, offensive and suggestive gestures or comments, asking about a person's sex life, or making sexualized remarks about a person's appearance, sexualizing the work environment with imagery or other items, or telling sexual jokes. Can you read that again? Read that again, beginning at the beginning, the first words? Absolutely. And this is also in the Singh opinion and on the Human Commission's website. Sexual harassment is unwelcome verbal or physical behavior based on a person's gender and can include – All right, so – And then it gives the list. So, and can – until you reach and can include, it would include all forms of unwelcome conduct based on a person's gender. The list – And then the fact that it can include these other things doesn't mean that those are all it can include. Well, the list is informing what unwelcome means. And if you were applying expressio unis to that list, you'd say the common thread in all of this is sexualized misconduct. Yes, but the words and can include tell you that you don't apply expressio unis to it because it doesn't say being so-and-so, or it says it can include these. You don't use expressio unis to exclude everything else because the statute tells you it can include certain things. But the list is informing what it means to be unwelcome. And, again, I commend to you Judge Atkins' decision in Singh and Judge Cronin's decision in Maddow. But unwelcome means – Unwelcome means sexualized. It's unwelcome because it's sexualized. It's not unwelcome because you disagree with your performance evaluation. I think most people would agree that it's unwelcome to be told by the chairman of your company that you were conducting yourself badly in vaunting the good accomplishments of the unit that you were in charge of because we don't expect women to be engaging in that kind of masculine, reserved-to-men conduct. New York City has not read unwelcome in that way. And if you do, you eliminate the line between sex discrimination and sexual harassment. And it is clear that Congress meant there to be a line. And it makes sense, given the competing considerations that Congress was dealing with. On the one hand, it had federal policy in favor of arbitration and a longstanding rule of law that you honor contracts as written. Where is the Supreme Court case that you said? Meritor. Meritor. M-E-R-I-T-O-R. It's also cited in our brief. Thank you. I've reserved two minutes, but I'm happy to – Well, could you address our decision in Oliveira? I mean, even if we agree with you that there is a distinction between sex discrimination and retaliation or sex discrimination and harassment, why isn't that decision controlled? Well, in Oliveira, there was clear alleged sexual harassment. The allegations were this plaintiff's supervisor was joking about rape, talking about having sex with his wife, and watching pornography in the workplace. That was clear allegations of sexual harassment. The issue there was one of accrual. The sexual harassment allegations happened in the EFA pre-accrual period. The Court rightly held that sexual harassment dispute requires a relation to those allegations. In that case, the retaliation was based on reporting that terrible, terrible sexual harassment. And the Court said, yeah, it relates back to. But that – that – there's nothing to relate back to here. You don't have that sort of cornerstone threshold requirement of the sexual harassment allegations. So the retaliation can't relate back to it. It relates to allegations of gender discrimination. That's not enough to get you into EFA. And retaliation in and of itself can't suffice as a sexual harassment because that's not keyed off of someone's gender. It arises because of projected activity. So just retaliation without the underlying sexual harassment doesn't fulfill the textual requirement of having alleged – conduct that is alleged to constitute sexual harassment. And again, that was meaningful choice by Congress. It did not use gender discrimination. Thank you. May it please the Court. I'm Michael Willeman with Wigdor, LLP, with Shelby Layton from Public Justice. My friend here started by saying that the EFAA requires allegations constituting a sexual harassment claim. That is not what the EFAA requires. The specific language is that it requires allegations or it requires the plaintiff to submit conduct that is alleged to – excuse me, alleged to constitute a sexual harassment claim. And so the question is, what does sexual – well, first of all, the question that we spent most of this time arguing over before Chief Judge Livingston's question is not even how the lower court decided the issue. But I will address some of counsel's points around how you define sexual harassment because sexual harassment is different than sex discrimination. Sexual harassment in the workplace. Exactly. It is a form of sex discrimination. And the Second Circuit has defined what it means – sexual harassment means. Does the workplace suggest that the defendant would have to have some control over the behavior of the person or persons who would commit the harassment? No, Your Honor. Just gearing sort of off into that direction for a minute just to answer your question, case after case after case – and I'll cite to them right here – holds that third parties can form – the conduct of third parties can form the basis of liability for employers, whether they're vendors, whether they're business partners, whether they're clients, people who are interacting with employees. That's Summa v. Hofstra, Menker v. Hofstra, Leroy v. Delta, Reagans v. Town of Berlin. Those are all Second Circuit cases. There's many, many, many district court cases. The fact that the individual who engaged in, in this case, some sexual harassment, need not have been an employee or even under the control at the moment of the employer, there's also retroactive potential. That would be in circumstances where the employer somehow tolerates the sexual imposition by a third party. Yeah. Well, in this case, the employer watched it. But I think just to step back, because I think this is important –  The employer – Ms. Pierce's supervisor was there observing the events that were happening at that time. Is that the person who intervened and just separated her from the person who was leering at her? So there was a lengthy period of time in which our client was being sexually harassed, and I – By Lee. Correct. Yeah. There was then an intervention. There was a separation. There was then a period of time in which no remedial action was taken, during which – How long? How long a period of time? Weeks. I mean, ultimately, our client was terminated for making this complaint. Well, she didn't come back to the United States for a week already. I mean, how could the company investigate what happened in Paris without the complainant being back in the United States? The supervisor who observed it invited this individual to speak at a TikTok-hosted event shortly thereafter, which resulted in our client not being able to attend it. But I want to make – Is that really a basis for a claim of sexual harassment, that the company insulated her from a person whom she claimed was harassing her? What I want to make clear is that this entire event in Cannes is one event in a years-long pattern of sexual harassment, which is why I started with the issue of what is sexual harassment, and I think it's critical that I just cite this because, as defense counsel said, sometimes sexual harassment is commonly understood to have a meaning of sexually charged behavior. But the Raniolo case in the Second Circuit says, and I quote, and this is dispositive of the issue, Employer action. Understood. But my point is that this complaint alleges years of sexual harassment. It's not the sexual – But you say also, in addition, you say that after Lee had abused her sexually at the Cannes dinner, the employer, TikTok, had Lee come and be a speaker at a TikTok function? That's correct, which our client then – For having complained about Lee's conduct. With intervening retaliation.  And so, I mean, there's the retaliation piece of this, which I would like to eventually get to. Those are employer conduct related to the Lee sexual abuse. Absolutely. But you're further arguing that this is unnecessary because you're saying that the non-sexual abuse by the chairman, reproaching the plaintiff for boasting about the good performance of her partner, that those qualify as well. And it's not – I mean, not to be – You're saying it doesn't have to be sexual in nature. It can be discrimination against sex. Yeah, not to be too cute about it, but it's the Second Circuit saying that. I mean, Rainiola says literally that, what I just read. So, is there any distinction, then, between sex discrimination and sexual harassment? Discrimination based on sex is the overarching umbrella. And if you look at the disterio case, there's two forms of discrimination based on sex. There's what you would call these tangible or discrete events. I think the easiest one would be a simple failure to promote outside of the context of anything else. Or maybe a failure to hire would probably even be a better one. And then, secondly, there is sexual harassment. Sexual harassment then breaks down, and this is disterio, and I'm quoting again. A plaintiff seeking relief against an employer for sexual harassment in the workplace can proceed under two theories, quid pro quo and hostile work environment. So there's sex discrimination, which is the overarching umbrella. There is these discrete, which is meritorious. The representations in the cases I'm not going to bother getting into, but you read them. They're not, I mean, they're not even remotely close to what these cases say. Sexual harassment is a subset of sexual discrimination. Correct. As you argue. But the EFA, the EFAA is only speaking in terms of sexual harassment or sexual assault. Yes, but sexual harassment. Talking about the subset.  Not the overarching broad principles. It's terrible to tell somebody that because of their sex they, you know, you're not going to get promoted. But that's not a sexual assault. That's not sexual harassment. It is sexual harassment. Well, you argue it is sexual. It's a subset. It is sexual harassment. I mean, Raniola, I can't, I don't want to keep repeating myself, and I apologize for that. Okay. But you cannot decide this case. If you did not decide it on the narrow grounds that the district court decided it, and I apologize to say you cannot. I'm not, obviously you're discretionary, do whatever you want. But the district court's decision relied on Olivieri. That is good law, which I can talk about separately. If that's not good law and for some reason you need to plead a retaliation, excuse me, a sexual harassment claim, Raniola defines sexual harassment. The court, as a matter of black letter, Second Circuit binding law that respectfully the court must follow, cannot redefine sexual harassment. It's particularly given that the EFAA looks to the statutes at issue to define sexual harassment. And Raniola has already done that for this court and has included that despite the common understanding, non-sexually charged sexual harassment is actionable as a sexual harassment claim. And it actually makes sense because despite the common understanding of sexual harassment, which is not the legal definition under any of these statutes, the word sexual actually doesn't mean sexually charged or sexualized or lustful or anything along those lines. If you look at both the Webster's Dictionary and the Oxford Dictionary, the word sexual means pertaining to sex or the sexes. So even as a matter of pure definition, sexual harassment and the Raniola case got it right because sexual harassment is not limited to sexually charged behavior. But don't we have lots of cases in which we have affirmed findings of sexual harassment, which were simply widespread discrimination based on the gender of the person, where the person was being treated badly as a pattern by the employees or by the superiors based on the fact that it was a woman. Over and over again. And even the Raniola decision cites, and it's not just this court, cites cases from the First, Fourth, Seventh, Eighth, and D.C. circuits, and that was 25 years ago. The Meritor case itself is important because it actually explains why the hostility, why hostile work environment claims exist and why sexual harassment claims exist. And the reason they exist is not to prevent lustful behavior in the workplace. It's because Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult. There's nothing in the Title VII or in the, and Your Honor correctly pointed out, even in the EEOC guidance, the city division guidance, the state division guidance, that suggests that discriminatory intimidation, ridicule, and insult has to be sexually charged. Otherwise, you wouldn't have race discrimination hostile work environments. You wouldn't have age discrimination hostile work environments. These would not be things if you incorporated sexually charged into the purpose of preventing harassment under Title VII. And the state human rights law makes a specific distinction involving sexual harassment. And the city human rights law, I mean, I won't, we don't need to get into it, but, I mean, arguably virtually anything could fit within the definition. And the EFAA requires us to look at those laws when you're defining what sexual harassment means. I do want to speak very briefly, if Your Honors will indulge me, on the Olivieri decision, because the idea about. . . I'm sorry, were you saying the EFA. . . Excuse me. . . The EFA requires looking at those laws and. . . Oh, and so the EFA does not define sexual harassment. It defines it to the extent that that's the appropriate word. It says that in order to define it, you have to look at the federal law, the state law, the tribal law. In other words, unlike sexual assault, which has specific, well, much more specific definition, EFA says look at the statutes. And so that's why you look at Rainiola for Title VII and, frankly, for the state and city human rights law as well. But my only brief point was that I've been talking a lot about Title VII jurisprudence, but it's really critical here. We only need one claim that's brought. . . . . . that describes conduct, that it alleges to constitute a sexual harassment dispute. And so to the extent that even under the city law we've accomplished that, which is wildly broader in terms of what it protects than the federal law. . . . . . such as treating women differently than other people. Correct, but that's sexual harassment. That's, again. . . Is that a definition of sexual harassment, or is that simply a statement of what violates the law? I mean, it's both in the case of the city law. That sexual harassment. . . I'm talking about the city law. Yeah, so sexual harassment isn't defined in the city law. No, it's not. But there's no reason in the city law to take. . . Well, that's why it's not defined in the city law. That's why when you refer to the city law and you said it's broad as all get out, which it is. . . . . . the breadth is just treating someone differently than people who don't have the characteristic that's protected. Correct, but if you. . . For instance, if you take Rainiola to apply. . . Let's say you take Rainiola. You say it applies only to Title VII. It doesn't apply to the city law. The city law, by its very nature, has to be as protective, if not more protective and construed that way than Title VII. So there's no way that you could find Title VII sexual harassment includes non-sexually charged behavior. . . . . . and not find the same under the state and city law. That was the point that I was briefly trying to make. But my point is if you somehow determine that Title VII, despite Rainiola, isn't applicable to trigger the EFAA. . . . . . it's certainly applicable under the city law. And then you get into the issue of whether or not the word case means case, which I could discuss. But I want to first discuss, if Your Honors will indulge me, Olivieri. The entire basis of triggering the EFAA under Olivieri was retaliation. It was not. . . I understand that there were allegations of sexual harassment that predated the enactment of the EFAA. But in deciding that the EFAA applied, the Court held, quote, . . . . . . Olivieri's retaliation-based hostile work environment claims under Title VII in the state human rights law accrued after the effective date. . . . . . . . and it says, we conclude that the retaliatory conduct Olivieri alleges she experienced after this effective date . . . . . . is similar in kind to the retaliatory conduct she experienced before the effective date. There is no . . . Yes, it was an accrual case. But they're both . . . And I think your time has expired, so I'm going to ask if you can sum up. Oh, well, Your Honor, I would simply say that Olivieri stands for the very clear proposition, and actually the necessary one if read properly, that retaliation claims triggered the EFAA. Thank you. I wonder if . . . I think we have a puzzling issue that hasn't been addressed by either counsel except just in a fragmentary way. I wonder if we could have some discussion from both sides of the question whether case means the whole case or whether case just means the claims based on sexual harassment. So to use the case . . . to order the case again, virtually every case except for one that was overruled on objection has held that case means case in terms of meaning the whole case. And the language on this is clear. We haven't ruled on that. The Second Circuit has not ruled on it. There is a . . . in the Diaz-Roja case, which is currently pending before the Second Circuit, that issue was argued by my colleague about six weeks ago, so . . . So it's pending before another panel. It is. I would say, to just be short, this . . . the language is very clear. It says, with respect to a case that is filed under federal, tribunal, or state law that relates to the sexual harassment dispute . . . I'm not going to belabor the point of case meaning something different than claim, meaning something different than cause of action. But cases like Diaz-Roja, Adelo, Baldwin, Johnson, Kelly all have interpreted this language to mean what it says. The defendant's argument is . . . You say it means what it says, which I certainly agree. I just don't know what it means. Well, I mean, that's fair enough. But the question is, in this context, the very specific question is, what does the word case mean? And Congress . . . Well, let's take an example. Let's say you have a woman who has been sexually harassed. She brings a case under the EFAA. Doesn't go to arbitration. But, in the same case, she claims that her 401K contributions were never credited properly. She claims a wage and hour violation. She worked overtime and didn't get paid. And she also claims that she was discriminated against on the basis of her age and national origin. Does all of that go as one big, nice case? It is. Free of arbitration? Correct, Your Honor. And that's . . . And, well, I can tell maybe Your Honor is a bit concerned about that result. But that's what the statute says. It could not be clearer. It says that the case is what the arbitration agreement is void with respect to. And you first . . . You need two things, just to be clear, so it's not . . . That's a radical position to defend. I'm not really sure you need to take that radical position. But that's what I hear you saying, that the wage and hour case goes right along with the sexual harassment case. The Federal rules allow individuals to bring claims together when they're against the same defendant. And to the extent that those claims are properly brought together in the same case, again, the language of the statute . . . I don't want to say that the case is a case is a case, but the language of the statute says . . . Not only does it say case, but there are other areas in the statute that refer to claims . . . If you have these diverse cases, and I think you agree that it's a strange . . . It's a sound reading, according to you, but it has a strange result. But why can't a district judge just simply stay the wage and hour claim or the 401k claim pending arbitration and just send the — everything relating to sexual harassment, however broadly interpreted, to a jury? Well, I would say for two reasons in the employment context. I mean, the first reason in any context is that the EFAA doesn't permit the judge to do that. I mean, the EFAA requires that the arbitration agreement is void with respect to the entire case. So, unfortunately, if the judge was so inclined to do that, the EFAA says, no, you can't do that. The second reason is that typically, and this was explained, gone through in some detail in the Diaz-Roja case. In a typical circumstance involving an employment situation, the employment relationship is sufficient nexus to determine that the case in each of the causes of action would be related to the sexual harassment dispute. So there is precedent. So that's a limitation there. So if you had several claims which relate to misconduct of any kind against the plaintiff as employment, all of those — that whole case, those bundled claims that arguably deal with sexual harassment, goes to the jury. But I'm not sure why it is deemed to be one case when it has a wage and hour component. So, I mean, I hate to sound like silly, but it is one case. I mean, there's no question it's one case. The question is whether or not the word case in the EFAA is referring to a case, like we normally interpret it, or is referring to a cause of action for which there is zero support. Or it's several causes of action that constitute a case of sexual harassment. Well, Your Honor is suggesting, I think, that there could be a case within a case. But that's not — I mean, that is not something that's ever been acknowledged by any court, ever. And it's not something — It would be very, very advantageous. I'm sorry? It would be very advantageous to take a wage and hour case and fold it into a sexual harassment case. And then make it a class action. So all of a sudden you have a large vehicle that has just avoided arbitration in a way that I can't believe Congress intended. Well, I think that if you look at — there are some cases, for instance, the Lambert case, that have severed. And I think what Your Honor's issue is can be resolved by basic notions of severance, of making motions essentially to unjoin cases, and the Bell v. Hood case, where — so in the Lambert case, which I'm not saying that I necessarily subscribe to this, but just to address Your Honor's concern, is that there was a plaintiff in that case who only had wage and hour claims. And the fact that that plaintiff was in the case that another plaintiff had a sexual harassment claim, that was deemed not sufficient to keep that plaintiff in the case. There has been no case — Which case is that? It's Lambert, I believe. And there has been no case in which a plaintiff who has a sexual harassment claim, where any court, except for Merrill, which promptly was overruled on objection, where any court has said the word case doesn't mean case. And I think one of the concerns that has been addressed by the prior panel in the oral argument, by the defendants, et cetera, is that someone will just slap an allegation of sexual harassment into an otherwise unrelated case, which addresses defendants' futile textual argument, because you need both the allegation of sexual dispute, sexual harassment dispute, and then you need the case to relate to that. And what that does — and the case is broad. That's our position. But what that does is it prevents someone from saying, you know, Billy hit me with his car a year ago. Also, by the way, Billy has sexually harassed me, but I'm bringing a case because I got run over by the car. That is something that Bell v. Hood, which is acknowledged in Diaz-Roja, is a way of saying, okay, now we've gone too far. That's where we draw the line, because this allegation doesn't even relate to the case, which is a hit-and-run. So there is protection built into the statute. And that's why when defendants say, well, you see the word sexual harassment dispute twice in the provision that describes what voids an arbitration agreement. It's required to be twice in order to protect the defendants from precisely Your Honor's problem, which is slapping a sexual harassment allegation into an otherwise completely unrelated case. I mean, there is some protection against that by the Iqbal standards that require citing specific facts that render the charge plausible. Yeah, I don't think – I mean, we went into it in too much detail, but I don't – there is protections in – I think Bell v. Hood, frankly, is a better one. And I think that Diaz-Roja describes other protections, like someone can be sanctioned for bringing an allegation frivolously just to do forum shopping. And that's a – You're not arguing for plausibility pleading here. Well, that's my point. No, this is where I'm getting to, actually, is that it's very clear from the statute that it only requires – and this is – I've got to go right back, and then I'll sit down. I probably overstayed my time. Yeah, yeah. We want to hear all the arguments. But I'm going back to – We are all aware that the case issue is – we're queued behind another panel. But it's very helpful to explore it. Yeah. And, I mean, ultimately, again, the words – if you look at the two relevant provisions, and this goes to the plausibility standard and where I think defense counsel is conflating, to use the best, friendliest term, the provision that describes what voids an arbitration agreement says that you have to allege facts constituting a sexual harassment dispute. So I would concede you have to allege facts that constitute a sexual harassment dispute. What is a sexual harassment dispute requires you to allege facts that you say is a sexual harassment dispute. And the allegations – it says alleged to constitute – excuse me – a sexual harassment under federal, state, or tribunal law. And Iqbal, the reason that I think Iqbal is a good reference for another reason, is that Iqbal makes it very clear that allegations and causes of action are two completely different things. If you allege something to be a cause of action, or if you're required to allege something to be a cause of action, that doesn't mean that you're required – You seem to be saying that the allegation, the naked allegation in itself, is enough. But I think the phrase is, it's alleged to be sexual harassment under certain statutes. And therefore, I don't see why the Iqbal principle wouldn't apply. It's similar to the federal jurisdictional principle, right? This is a threshold issue. You don't need to sufficiently plead. The Congress knows how to say when you need to sufficiently plead. For a federal jurisdiction, you don't need to sufficiently plead a federal claim. You just need to say that's what you're doing. Now, Bell v. Hood says if you say that frivolously, you're not in federal court. But if you don't say that frivolously, if what you are saying – if I say, okay, this – I'm saying that this constitutes a violation of federal law. Whether I'm ultimately right or wrong about that does not give me – give the federal court jurisdiction or lack of jurisdiction. As long as I'm saying that it constitutes that federal law in a non-frivolous way, that's the threshold issue that the court then assumes jurisdiction. But aren't you then going back to the frivolousness standard, which has been displaced by a plausibility standard, because you have to – you have to allege something under a statute, some other statute. And when you allege something under a statute, you have to allege it plausibly. In order to proceed, yes. In order for the court to have jurisdiction over the case, no. The court doesn't look – so if you – that's the short answer to your question. Right? And so I'm not suggesting that the plausibility standard replaced the frivolity standard. Frivolity standard, you're toast no matter – I mean, if you do something frivolous, it doesn't matter. You're already gone. But my point is – I mean, Iqbal replaced the possibility if there's such a speak or the notice pleading standard with the plausibility standard. My point is that this is a threshold issue. District courts should not be deciding on an EFAA motion the sufficiency of a pleading. And one of the reasons that it shouldn't be deciding the sufficiency of the pleading, just as it doesn't decide that to determine whether it has Federal jurisdiction, is that this Court will now be deciding Rule 12b6 motions as a matter of course, because every time we have a motion to compel arbitration that is denied, the defendant has an automatic right to bring it up to this Court. And then we're going to be debating whether or not one grope or two gropes or one comment or ten comments or is this sexually charged enough or not. And that is not what Congress ever intended. I hear the arguments about intent. It still seems to me odd that we would go back to the frivolous standard. That's been displaced. So if I thought there was a pleading standard here, I guess plausibility strikes me as more plausible. But if it's not a pleading standard, I'm just, I mean, maybe it was Judge Cronin's decision below that was leading me to think about, maybe we look at the conduct that is alleged to conduct sexual harassment, so we're looking at the factual allegations and we assume them to be true. But something short of a pleading standard, is that a possibility here? I don't think so. I don't see how you could draw the line on that for a couple reasons. One is that that's not, I do think the most appropriately analogous is the Bell v. Hood federal jurisdiction. I think, I don't see. I think you're, I don't think that Article III federal jurisdiction is helpful because under Article III, if you bring a claim, if you bring a claim saying the defendant's conduct violated some federal statute because the moon is made of blue cheese or because of some ridiculous, the federal court has jurisdiction under Article III to hear that. If you are claiming that you were injured by the defendant's conduct, even though the plaintiff cites a ridiculous reason that has nothing to do with the statutory standard, the court has jurisdiction to hear it if you're alleging a violation of a particular federal statute. And in fact, our court has been severely chastised by the Supreme Court for confusing 12b-6 with Article III jurisdiction. If the plaintiff pleads the violation of the statute, you have jurisdiction to rule, no, the fact that the moon is made of blue cheese has nothing to do with the standards of the statute. The plaintiff loses as opposed to saying, oh, we can't adjudicate this case. We can't rule that the moon being made of blue cheese has nothing to do with the federal standards. We have the jurisdiction. So I don't think it's helpful to bring in Article III to this. The mere fact that one says a federal statute has been violated is enough to give the court, assuming that one also alleges ripeness and standing and so forth, that's enough to give the federal court the jurisdiction to rule as to whether a violation has been pleaded. Well, that's actually better. I mean, I'd like that standard, frankly. I mean, I do think that there are limits to it because Bell v. Hood clearly says you cannot just slap on a federal statute that has nothing to do with the underlying claims. But I think what Your Honor just said is, you know, predicting, you know, what could be the future, is that the Supreme Court would be equally inclined to chastise courts who hold to conflate the pleading standard under 12b-6 with an EFAA analysis when the EFAA doesn't require it. And just to your point, Chief Judge, you – these cases are not all going to be in federal court. And so you're going to have cases that are in State court under State procedural rules that don't apply plausibility standards. So there's not – you cannot set a plausibility standard, certainly not a 12b-6 plausibility standard. A state of claim standard does not exist in the statute. Alleged to constitute is different than what the other provision says, which is allegations that constitute. This is – this is not a Congress of engineers that don't know of a law. I mean, these are commonly used words, case, cause of action, claim. And they're very clear in the way that the law is set out in this case.  So Judge – Judge Jacobs was making the observation that to construe case as taking the whole case with you would have bizarre results. And I can't disagree that that's true. But it seems to me that under this statute, either way you interpret the question of the breadth of case, what it covers, either way you go, it's going to produce bizarre results. Because on the other side, it takes – if you construe it to involve that the IFA affects only the disposition of the particular claim, then it takes a single litigation and requires that the single litigation be broken up into different parts and you have two different proceedings and that's – that's bizarre as well. Well, not only that, but I mean, again, you're going to flip this whole thing on its head because, okay, the court says this claim needs to go to arbitration because it relates to age discrimination. You know, this claim can stay in court because it relates to, you know, sexual harassment and resulting retaliation. Well, the sexual harassment complaint also included a complaint of age discrimination. Is that related? Also, the case that doesn't go to arbitration is not just going to be stayed. That's going to be appealed to the Second Circuit. And then there's going to be a Second Circuit deciding on literally a case-by-case-by-case-by-case basis, which runs completely afoul of the ordinary procedure regarding interlocutory appeals and a motion to dismiss. Congress does not want this circuit court reviewing plausibility standards on a motion to dismiss stage. That is not how the interlocutory appeal process works. It's not how the Federal rules work. And in that context, it would be – and given the – the text of the statute, which has no support to suggest that this Court should be doing that, it would be an outrageous result for litigants to have to go through that process and essentially for the defendants to get a de novo, right off the bat, first-crack review from the district court – excuse me, from the circuit court about the sufficiency of the pleadings, which is where this is going. And the fact that we're even talking about if something is sexually charged enough, at this stage, at this Court, is in and of itself a reason to affirm the judge's decision below. We'll hear rebuttals, but you'll have as much time as you need. Sometimes it goes one way, sometimes another. Please proceed. Thank you, Madam Chief Judge. Just a couple of cleanup issues right off the top. I would direct the Court to paragraph 404 of the amended complaint at JA163, which says, at the dinner, people were intervening and they were trying to get Mr. Lee to stop and they eventually got Ms. Pierce away. There was no watching and condoning of any of this conduct. That's alleged in the complaint. With respect to Ronnie Ola, the conduct in that case was police officers putting up a poster saying, Plaintiff gives free blowjobs. Well, what you're saying is your first point. Yep. What about the fact that the defendant subsequently had Lee come and give a – be a speaker at a TikTok function? That was actually a Zenith function. That's what's alleged in the complaint.  That was the – that was his employer's function. That was the Zenith function. That's actually in the complaint. And what the – what the employer – what the defendants did in that case was to tell her, he's going to be there, which was the caution that she needed to make the decision not to – not to be in the same room with that person. So that was actually protective conduct. And she alleges also that she was fired because of her complaints about Lee. Correct. That's – that's the allegation in the complaint. But the conduct by Lee was not sexual harassment in the workplace, because it's third-party conduct, and there's not a single allegation. But her being fired for complaining about it is in the workplace and is conduct of the employer. It is. But under EFA, it has to relate to sexual harassment. The retaliation has to relate to sexual harassment. And in Olivieri – But how do you say it doesn't relate to sexual harassment? Because what Ms. – She was complaining about the employer's response to sexual harassment, and she was fired for doing that. Why doesn't that relate to sexual harassment? Well, the employer's response is not sexual harassment. No, you didn't say it has to be sexual harassment. The employer's response is – relates to sexual harassment. No, it doesn't, because there was never sexual harassment. Mr. Lee did not engage in sexual harassment. He engaged in horrible conduct. It's boorish. I completely agree with that. That's not harassment. Let's take a case where a third party, a third party that has business relations with the defendant, employer, the third party commits acts of sexual harassment against the plaintiff in this hypothetical suit. And the plaintiff complains to the employer about, you have this person whose company does business with us. He comes here and he does sexual harassment at people who are trying to deal with me when I'm discharging my job to do business with his company. And she gets fired for making that complaint. Is that sexual harassment? That's not sexual harassment. That may be retaliation because she's engaged in protective activity. Are you saying that the EFAA does not cover retaliation? Sexual harassment dispute can include retaliation when the retaliation relates to sexual harassment. The underlying action, the touching of the arm and suggesting they go dancing, doesn't amount to sexual harassment. But for purposes of retaliation, it's a different test, isn't it? It's a question of whether the complainant could have a good-faced, non-lawyerly, reasonable view that it is sexual harassment. So it doesn't have to be sexual harassment. If you complain about something that you reasonably believe and in good faith is and you get fired, that's impermissible retaliation. I don't disagree. Retaliation only requires a reasonable belief. But EFAA requires more. What's more hypothetical is that the person from the other company who she is required to deal with, the employee is required to deal with to do the company's business, that person comes and commits acts of sexual harassment that you would agree are acts of sexual harassment against her. And she complains to her employer and says, you can't allow this person to be coming and dealing with us when he comes and commits sexual harassment. You have to do something to fix that, to tell the other company they can't send him or whatever. You've got to deal with it. And the employer fires her. The employer hasn't engaged, hasn't done anything sexually charged towards her. He's fired her in retaliation for her complaining about the sexual harassment being done by the representative of a company that they do business with. But, again, there's a distinction between what retaliation law requires and what EFAA requires. Retaliation, I agree with you, Judge Jacobs. To state a retaliation claim, you only need a reasonable belief. But under EFAA, its terms require conduct that constitutes sexual harassment under law. But retaliation for complaining about sexual harassment would be covered by EFAA, I assume. Otherwise, EFAA has no force. No. Only if the underlying allegations constitute sexual harassment. And those were the facts in Olivieri, that the thing that the plaintiff in Olivieri complained about was being told by her supervisor about his sex life and being forced to watch pornography. And she complained about that. That is sexual harassment. And the Court correctly held, yes, you can pierce the underlying conduct. And if that underlying conduct is sexual harassment, the retaliation clause has been made. You're saying if it's sexual harassment by the employer? Under applicable law. That's what EFAA requires. And applicable law.  Does it have to be by the employer? No. If she's complaining about sexual harassment? No. But the employer tolerates? Well, it's a little bit of a loaded question. Under this Court's jurisprudence, co-worker and third-party conduct can be imputed to an employer if the employer has reason to know of it or if it can control the  So if those predicates. And what about if the employer, when the person comes to complain about it, even though the employer couldn't control it, even if that were the case, but the employer says, oh, you're complaining about sexual harassment by this person from another company dealing with us, you're fired. Then that's a. That's not covered. No, that's a retaliation claim. But the underlying conduct. So you say it's not covered by EFAA? No. Because the underlying conduct isn't sexual harassment. But if you, you know, in the employer imputation cases, if, for example, there was ongoing sexual harassment and the person came in and complained and then they were harassed again, that's clearly imputed. And that's because the employer is having the, is being, the harassment of the third party is being imputed to the employer. So that's a sexual harassment. Correct. Correct. And that is distinct from a retaliation. Correct. And this distinction makes sense, again, because of the balancing that Congress is doing between the right to contract and the federal policy in favor of arbitration and having this narrow area where the arbitration agreements were being abused. And they were being abused in these egregious cases of sexual assault and sexual harassment. I would also point out to the Court. It's just a factual question. When, chronologically, was Lee removed? So let me. I'm working on tectoxicants. Absolutely. And I'll give you the sites here, too, so you can, for the chronology. So the, Mr. Lee's conduct was reported on Wednesday, June 22nd. That's paragraphs. It happened on the 21st. It was reported on the 22nd. And she came back to the United States on the 27th.  So it's Wednesday. When was Lee removed from the account? The next week. So Wednesday, she reports. Friday, she leaves to go back home. Tuesday of the next week, the formal investigation is launched. And he's gone by the next week. And when was she fired? So they take about. And when was she fired? September. September. But what is the date that he was removed from tectox account? I appreciate you saying it's days after that, and then it's after something else. I'm limited to what the complaint says, and it only says he's off the account. I think it was July. She finds out about it on July 8th. That's paragraph 421. So my recollection of the complaint is it doesn't actually say what day he's taken off the account. It just says what day she found out about it. All right. So that's a couple weeks after the event. Exactly. Your position is they have to look into it. They just can't. It's in a foreign country. People are traveling. The investigation is launched literally the Tuesday after everybody returns. I think that would be a very good answer if it weren't fired by her allegation that she was, if it weren't followed by, as she alleges, her firing because she complained about Lee, because removing him from the account is protecting the employer from future problems. But if the employer fires her for having complained about Lee, I just don't see that you have a decent argument that that's not something covered by EFA. Again, EFA requires the cornerstone, the very first requirement of the sexual harassment dispute definition, requires conduct that is alleged to constitute sexual harassment. If you don't make it past that threshold, you don't get to the related to question. You have to have sexual harassment present to relate to. Well, you're saying it wasn't sexual harassment. On one level, I'm inclined to agree with you because usually a single instance cannot be sexual harassment unless it's extremely serious, and here he touched her arm and invited her to go dancing, which doesn't seem to be extremely serious. But it has to, it's enough if that constitutes sexual harassment under any of these laws, state laws, city laws, and so on, and I don't see how we can say categorically you need more than one instance unless the one instance is serious, that that's federal law. We're not arguing that. I mean, we can see that New York City has gotten rid of the severe and pervasive requirement. I think there's two answers to that. Every law, New York federal and New York City, follows the imputation rules that we're talking about. So this third-party conduct would not be sexual harassment under any law that we're talking about. Even under New York City law? Even under New York City law because they have an imputation requirement standards, too. So if you don't control the person and you don't have reason to know, it's not workplace sexual harassment. The point is that ultimately you can't control a third party. You're doing business with that party. You threatened not to do business with them. They will do what you ask. And you also have to have reason to know. Control and reason to know. And that's what's, the reason to know is absent here. And there's nothing in the complaint to suggest that the defendants had any reason to know this would happen. And when the complaint happened, they took action, which was to tell Ms. Pierce, he's going to be here, he's not going to be here. That was the following day. That's the day she complained. The following day? She complained the next day. And all that happened the next, on the day of her complaint. And when is the speech by Lee, the event that Lee would attend, that she was refused from attending? That date isn't in the complaint, but the band of time we're talking about is complaint on Wednesday, everybody leaves on Friday. So I have to assume it's Wednesday or Thursday. That is still a lot to cover. I think what, at least what I heard the appellees say is Ms. Pierce, he's eliminating the distinction between sexual discrimination and sexual harassment. It's been completely collapsed. And a second point on your question of New York City, I'm sorry, I lost my train of thought, is to take New York City law to where an appellee wants to go, you could have a city or a state pass a law that says any time you have a legal violation that impacts a woman, that's sexual harassment. We all can agree that a city and a state can't do that, and that would fall within EFA. So there is a Federal backstop. And I would refer the Court to 409 U.S.C. 402B, which is the provision right. What's that number again? 402B, B as in Boyd. It's the provision right after the substantive guarantee. Yes. So it's part of the same statute. The first sentence of that section, which is immediately after the substantive requirement, is an issue as to whether this chapter applies with respect to a dispute, shall be determined under Federal law. I think that does two things. First, this plausibility argument that while you might have a state standard that's different from the Federal standard, 402B is pointing you to Federal law to determine whether or not this dispute applies. So I think the plausibility standard of Iqbal and Twombly applies across the board by virtue of 402B. I think 402B also confirms that there's a Federal backstop here. Generally speaking, Iqbal does not apply to discrimination complaints because of the bizarre McDonnell-Douglas standard that we've been saddled with for 40 years. It doesn't make any sense, but it's not compatible with McDonnell-Douglas. But you still require plausible allegations, even under McDonnell-Douglas. Minimum. Minimum. But they have to be plausible. I mean, and here, too, Congress didn't use the word frivolous. The language in IFA is not allegations of non-frivolous conduct. It's allegations of conduct that constitute sexual harassment. And I, again, refer you to Judge Cronin's decision in Mehta where he walks through allegation as training the court on the complaint. It means you don't have to win. You don't have to prove the thing. Maybe it's subject to a defense. But the key is, are there allegations, assertions of fact of conduct? And what's the thing that has to be asserted? Something that constitutes. Constitute means to form. What does it have to form? Sexual harassment under applicable law. And that is the plain language of the statute is requiring a pleading. And it's not awkward at all that you would have some kind of threshold determination that makes you look at the complaint. That happens in arbitration all the time. Questions of arbitrability, questions of unconscionability, those are threshold determinations that the court has to make on the face of the complaint and the face of the arbitration agreement that go to merits. It's very common to happen in the arbitration context. It's also common to have parts of a case in arbitration and parts not, because some things are arbitrable and some things aren't. These aren't unusual or bizarre consequences. This is how arbitration works. One side can appeal. The other can't from a motion to compel. That's just part of 9 U.S.C. So these aren't sort of awkward results. These are very typical and very common results in the world of arbitration. That takes us to case, which I know you've got another panel behind, so I don't want to waste your time if you don't want to – if you'd rather talk about other  I'm happy we are behind them. And I think it's a complex question. If I could take a gratuitous 30 seconds, this appeal comes to you on the assumption that New York City law applies. I would reserve that question. That is a very difficult textual question. This appeal, it's assumed for purposes of this appeal, but the statute says state, federal, or tribal, and it doesn't define state to include political subdivisions. So, again, we assume it for the brief. It's not anything to decide, but just if I could get a gratuitous 10 seconds, please, as counsel, to reserve that question. You said city, which is the subdivision of the state. I mean, you're saying that they would have to say county and township and village and everything else. I mean, they're preachers of the state, so it would seem that that's one of the only easy questions in this case. Well, Judge Jacobs, when Congress uses state to mean political subdivision, they almost always define it. It's not defined here. So that's why I'm saying it's just a question you don't have to decide and one that I think you would benefit from some briefing on the end. When Congress means political subdivision, they define state to mean political subdivision, and they haven't done it here. But I don't – I'm not going to waste any of your time on that. I'd like to ask that you reserve that question. With respect to case, the statute doesn't just say case. It says case ellipse relates to. And it has – the case has to relate to sexual harassment. So you're not reading case in isolation. And because of the term case relates to sexual harassment, that's forcing the court to go – to look at the case on a claim-by-claim basis. So are you reading the sentence of the statute that you're referring to? Yeah. The statute says – it's long. I'll leave out the ellipse. It says, Waivers shall be valid or enforceable with respect to a case which is under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute. So it's not just a case. It's a case that relates to the sexual assault dispute or the sexual harassment dispute. Two arguments come out of that from my purposes. It doesn't have to be separate. I mean, it's not talking about separate causes of action or counts. But the case itself has to relate to sexual harassment. And however many counts it's expressed in, however many subdivisions or paragraphs, but that would not include, for example, a wage and hour claim. Exactly. I mean, our argument is you don't read case in isolation. You have to read it with relates to and relates to what requires a claim-by-claim analysis. That's what you're – that's what Congress is compelling. But even if Ms. Pierce is right and case means the undivided whole, I think that the undivided whole of the case must relate to sexual harassment. And here there's an age claim. The undivided whole of the case. How do we know for that from the text? I mean, maybe you're right. But why isn't a case that contains some sexual harassment claims and other claims, it relates to the sexual harassment dispute, even though parts of it don't? I think that's the analysis that it's being compelled by. Yes, but what is so textually wrong with that analysis? Well, I think in this case you have an age claim that has nothing to do with the sexual harassment. And you have gender discrimination that's completely divorced from sexual harassment. Right. But they're brought together as one case. But the whole – so I think there's two arguments. The first is if case means the undivided whole, that means every – the whole – every aspect of the case must relate to sexual harassment. And here it doesn't. But you can imagine a world where the whole case relates to sexual harassment. So take, for example, the classic MeToo case where you have these nondisclosure agreements that are preventing someone from talking about their harassment. You can have a sexual harassment claim. You can have a challenge to the nondisclosure agreement's confidentiality provision. That also relates to your ability to talk about sexual harassment. It's – you can imagine a world where the whole bundle of the case is about the sexual assault or sexual harassment. But – I just don't – I don't see why the – you know, on one assumption, on one assumption, the – were it not for this statute, the whole case would be going by arbitration because there was an arbitration agreement that says disputes will be arbitrated. So on one assumption, the whole case would go to arbitration. But then if this statute says no, that doesn't apply, then the case goes to the  That's not – what's the big deal? Well, because Congress – The whole case would be in this forum, no. The statute is no. And the whole case goes to that one. Do you think it's – do you think it's more logical to split the case into two parts, that it's going to be proceeding in two different forums going ahead? Well, that happens at arbitration all the time. And again, the – Well, sure it does. But it also happens that cases – that cases with different parts are in the court. And that's not an unusual or bizarre thing. Well, I think it makes sense of the balance that Congress is trying to strike. Because, you know, on the one hand, you do have Federal policy in favor of arbitration and the sanctity of contract. And Congress had a very narrow exception that said we are going to ignore your contract and we will rewrite it in this very narrow instance. And so when I – I read case related to sexual harassment to say we're going to respect your agreement except for in this instance. That's a very dramatic language. But that's exactly what Congress has done. Whichever way we decide this, that's exactly what Congress said, is that – is that we're going to ignore the sanctified contract with respect to these kinds of claims, whether it's claims or cases. Congress is doing what you said is so horrible. Right. But it's the very narrow context of sexual harassment. And that – and that is the limit. So Congress is – Congress said in the statute we want you to interpret this very, very narrowly. It's an exception to Federal policy in favor of arbitration. And historically, like even in the Section 1 context, in Circuit City, the Supreme Court held that you have to analyze exceptions to the substantive guarantees, the FAA, narrowly. So that's established in Circuit City. That's not anything I'm making up. And here I think when you add to it the layer of the sanctity of the contract, that Congress would want the case to relate to the whole – to the whole sexual harassment. Otherwise, you should respect the agreements of parties. That strikes that nice balance between, you know, protecting the really – protecting against the egregious abuses, and me too, of people using arbitration to hide rape. You know, you can actually affect that purpose, but not have to, you know, bring into the courts the wage and hour claim or the – you know, these other claims that are unrelated to the harassment that really should be in arbitration given the sanctity of the contract. Thank you both. Thank you. We'll take the matter under advisement. Very well argued. I thank you. Yes, thank you. Very useful argument. Thank you for your help. Thank you. Thank you, Judge.